IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDDIE LAMONT ROYAL<br><br>Plaintiff,<br><br>v.<br><br>ALEXANDER IEROKOMOS,<br><br>Defendant. | No. 2:20-CV-0218-DMC-P<br><br><br><br>ORDER |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Before the Court is Plaintiff's first amended complaint. ECF No. 10. The Court will grant Plaintiff leave to amend the defects discussed below.

## I. SCREENING REQUIREMENT

The Court must screen complaints from prisoners seeking relief against a governmental entity, officer, or employee. See 28 U.S.C. § 1915A(a). The court must identify any cognizable claims and dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2).

A complaint must contain a short and plain statement of the claim that a plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint must provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive screening, a plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Id. at 678–79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Plaintiffs must demonstrate that each defendant personally participated in the deprivation of the plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). If the allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint does not state a claim. Iqbal, 556 U.S. at 679. The complaint need not identify "a precise legal theory." Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1038 (9th Cir. 2016).

The Court must construe a pro se litigant's complaint liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012). However, "'a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)). The Court may dismiss a pro se litigant's complaint "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1208 (9th Cir. 2017).

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner incarcerated in Mule Creek State Prison (MCSP). ECF No. 10 at 1. Plaintiff brings suit against a solitary defendant, Dr. Alexander Ierokomos. Id. Dr. Ierokomos is a physician at San Joaquin General Hospital (SJGH). See id. at 2. Plaintiff contends that Dr. Ierokomos subjected Plaintiff to pain and suffering constituting cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. Id. at 2–3. In pertinent summary, Plaintiff allegedly consented to a surgery to remove his tonsils, uvula, and part of his tongue. Id. at 2. Dr. Ierokomos was allegedly negligent and unprofessional, ultimately bungling the surgery. Id.

///

In order to correct his mistake, Dr. Ierokomos assertedly performed a second surgery that caused significant complications. Id. Plaintiff states that he never consented to that surgery. Id. When Plaintiff asked Dr. Ierokomos why he had performed a second, separate surgery to which Plaintiff had not consented, Dr. Ierokomos allegedly only replied, "You should be lucky I corrected my mistake." Id. The second operation caused Plaintiff's throat to swell, and Plaintiff could not eat solid food. Id. Plaintiff lost substantial weight. Id. at 2–3. Plaintiff also suffered severe blood loss, rendering Plaintiff anemic. Id. at 3. Plaintiff had to use a walker thereafter. Id. Plaintiff contends that he suffered severe significant scaring on Plaintiff's neck. Id. Finally, Plaintiff asserts that he ultimately had to use a painful urinary catheter while on a life support machine. Id.

### III. DISCUSSION

The Court finds that Plaintiff has not stated a viable Eighth Amendment claim against Dr. Ierokomos. First, there is no indication that Dr. Ierokomos is a state actor. Second, Plaintiff does not contend that Dr. Ierokomos was deliberately indifferent.

**A.  Section 1983 Does Not Apply to Private Actors:**

Generally speaking, private actors do not fall under § 1983's reach. To state a claim under § 1983, Plaintiff "must allege a violation of his constitutional rights and show that the defendant's actions were taken under color of state law." Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 921 (9th Cir. 2011) (quoting Gritchen v. Collier, 254 F.3d 807, 812 (9th Cir. 2001)); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006); see Sampson v. County of Los Angeles, 974 F.3d 1012, 1018 (9th Cir. 2020). The "color of law" or "state actor" requirement is "a jurisdictional requisite for a § 1983 action." Gritchen, 254 F.3d at 812; see West v. Atkins, 487 U.S. 42, 46–48 (1988). The question in determining whether a person is subject to suit under § 1983 is the same as the question in Fourteenth Amendment claims, Pasadena Republican Club v. W. Justice Ctr., 985 F.3d 1161, 1167 (9th Cir. 2021). Specifically, is the alleged infringement of federal rights fairly attributable to the government? Id.

Determining whether a private party acts under color of state law "is a matter of normative judgment, and the criteria lack rigid simplicity." Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001); Rawson v. Recovery Innovations, Inc., 975 F.3d

3

742, 747 (2020). "[N]o one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." Brentwood, 532 U.S. at 295–96. Traditionally, to have been acting under color of state law, a defendant must have exercised power possessed on account of state law and made possible because they are cloaked with the authority of state law. West, 487 U.S. at 49; Florer, 639 F.3d at 922. A defendant need not necessarily be a state employee, but they must be "a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions." Dennis v. Sparks, 449 U.S. 24, 27–28 (1980).

There are at least four tests that facilitate identification of state action. Namely, "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." Rawson, 975 F.3d at 747 (quoting Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003)); see Pasadena Republican Club, 985 F.3d at 1167. Satisfaction of any the tests is enough to find state action, provided no "countervailing" factor defeats a finding of state action. Pasadena Republican Club, 985 F.3d at 1167; Rawson, 975 F.3d at 747. Regardless of the test, the question is simply always whether a defendant has exercised power possessed and made possible because state law. Pasadena Republican Club, 985 F.3d at 1167.

The public function test is satisfied only upon a showing that the function relevant to a claim is "both traditionally and exclusively governmental." Rawson, 975 F.3d at 747 (quoting Kirtley, 326 F.3d at 1093). A plaintiff may satisfy both the nexus and joint action tests by identifying "a sufficiently close nexus between the state and the private actor," such that the private action may be treated as an action of the State, or where the State is so interwoven with the private action that the State was a joint participant in the action. Id. (quoting Jensen v. Lane Cty., 222 F.3d 570, 575 (9th Cir. 2000)). Governmental compulsion or coercion may exist if the State exercised coercive power or provided encouragement—whether explicit or secret—such that a choice must be viewed as one made by the State. Id. (citing Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).

Physicians who contract with prisons to provide healthcare to inmates are state actors. See, e.g., West, 487 U.S. at 50–54; Harris v. Mkrtchyan, No. 2:19-cv-1040-JAM-JDP (PC),

4

1  2021 WL 2651999, at *2 (E.D. Cal. June 28, 2021); George v. Sonoma Cty. Sheriff's Dep't, 732 F. Supp. 2d 922, 934 (N.D. Cal. 2010). However, private doctors, nurses, and hospitals who have not assumed the State's obligation to provide medical care to inmates, are not state actors just because they provide one-off medical treatment to an inmate. See, e.g., West, 487 U.S. at 50–54; Felix v. Casey, No. 2:18-cv-3185-KJM-AC-P, 2021 WL 2209828, at *2 (E.D. Cal. June 1, 2021); Probst v. Adams Cty. Sheriff's Dep't, No. 1:20-cv-00032-DCN, 2021 WL 1554064, at *3 (D. Idaho Apr. 19, 2021); see also Rawson, 975 F.3d at 748–49.

Here, there is no allegation here that Dr. Ierokomos is a contracted physician with MCSP or the California Department of Corrections and Rehabilitation (CDCR) or that he is otherwise employed by the State. Indeed, it appears that Dr. Ierokomos is employed by SJGH. ECF No. 10 at 2. The Court recognizes that SJGH may be a public hospital, but the nature of Dr. Ierokomos' employment is unclear. Plaintiff does not make even a conclusory allegation that Dr. Ierokomos is a state actor. See generally id. at 1–4. To proceed against Dr. Ierokomos, a non-CDC employee, Plaintiff must plead facts that Dr. Ierokomos' actions are attributable to the state. See, e.g., Felix, 2021 WL 2209828, at *2; Vasquez v. Moghaddam, No. 2:19-cv-1283 AC, 2021 WL 1946487, at *4 (E.D. Cal. May 14, 2021). It is not clear that Dr. Ierokomos, other than the instances in which he treated Plaintiff, has a sufficient relationship to the State or CDCR to be considered a state actor. Without more, it is too indefinite whether Dr. Ierokomos is adequately cloaked in the authority of the State or has assumed the State's obligation to provide sufficient care to prisoners such that liability under § 1983 may attach.

The Court will grant Plaintiff an opportunity to amend his complaint in order to clarify whether Dr. Ierokomos is a state actor subject to liability under § 1983.

**B. Medical Negligence Does Not Constitute an Eighth Amendment Violation:**

    **i.   Eighth Amendment Standard:**

To establish an Eighth Amendment claim based on medical treatment, an inmate must show deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002). A plaintiff must show (1) an objective "serious medical need" by establishing that

5

"failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'" and (2) that a defendant's response to the serious medical need was deliberately indifferent. Jett, 439 F.3d at 1096 (citation omitted); see Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

Deliberate indifference exists if a defendant *subjectively* "knows of and disregards an excessive risk to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation and internal quotation marks omitted); see Colwell, 763 F.3d at 1066. A defendant must have been aware of facts from which they could draw the inference that a substantial risk of harm exists, and they must have also drawn the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994); Toguchi, 391 F.3d at 1057. The question of deliberate indifference focuses on what a defendant's state of mind actually was. Farmer, 511 U.S. at 834–39. A prison official must have had a "sufficiently culpable state of mind." Id. at 834.

Deliberate indifference can be established by showing "(a) a purposeful act or failure to respond to a prisoner's pain or medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted); see Colwell, 763 F.3d at 1066; Wilhelm, 680 F.3d at 1122. Knowing provision of subpar medical care and denial or delay of medical care may violate the Eighth Amendment. See Estelle, 429 U.S. at 104–05, 104 n.10; Colwell, 763 F.3d at 1066. But deliberate indifference is a high standard and requires more than an ordinary lack of care. See Colwell, 763 F.3d at 1066; Wilhelm, 680 F.3d at 1122; Toguchi, 391 F.3d at 1057, 1060. Negligent medical care alone is not a constitutional violation. See Jett, 439 F.3d at 1096; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998); see also Farmer, 511 U.S. 825, 835–37; Estelle, 429 U.S. at 105–106. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

A difference of opinion between an inmate and prison medical staff about the proper course of medical treatment is not deliberate indifference. See, e.g., Toguchi, 391 F.3d at 1058; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Nor does a dispute between an inmate and prison officials over the necessity or extent of medical treatment establish a constitutional violation. See, e.g., Toguchi, 391 F.3d at 1058; Sanchez, 891 F.2d at 242. To establish that a difference of

1    opinion rose to the level of deliberate indifference, an inmate must show that the course of treatment
2    the doctors chose was "medically unacceptable under the circumstances." Toguchi, 391 F.3d at
3    1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); see Colwell, 763 F.3d at 1068.
4    Inmates must also show that the doctor chose a course of treatment in conscious disregard of an
5    excessive risk to the inmate's health. See Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332.

6          **ii.**    **Plaintiff Does Not Allege that Dr. Ierokomos was Deliberately Indifferent:**

7          The Court construes Plaintiff's complaint as sufficiently alleging a serious medical
8    need—namely, the underlying conditions for which he went into surgery and the complication he
9    suffered as a result of surgery. See ECF No. 10 at 3–4. But Plaintiff only contends that Dr.
10   Ierokomos was negligent and unprofessional and that his subpar provision of care caused him cruel
11   and unusual pain. Id. at 3. Be that as it may, those assertions do not demonstrate that Dr. Ierokomos
12   was deliberately indifferent. See id.

13         Whatever Dr. Ierokomos' professional errors were, as currently alleged they do not
14   constitute deliberate indifference. It is possible that Dr. Ierokomos may have botched Plaintiff's
15   surgery and violated professional norms in performing a surgery to which Plaintiff did not consent.
16   And it is possible that Dr. Ierokomos' second surgery caused Plaintiff significant pain and other
17   health complications. But negligence in the provision of medical care does not violate the Eighth
18   Amendment. See Farmer, 511 U.S. 825, 835–37; Estelle, 429 U.S. at 105–106; Jett, 439 F.3d at
19   1096; Frost, 152 F.3d at 1130. Medical malpractice on Dr. Ierokomos' part does not rise to the level
20   of a constitutional deprivation just because Plaintiff is a prisoner. Estelle, 429 U.S. at 105–106. Nor
21   does any difference of opinion between Plaintiff and Dr. Ierokomos as to the appropriate course of
22   treatment establish a constitutional violation unless Plaintiff can show Dr. Ierokomos' course of
23   treatment was medical unacceptable under the circumstances and chosen in conscious disregard of
24   an excessive risk to Plaintiff's health. See, e.g., Toguchi, 391 F.3d at 1058.

25         The Court will grant Plaintiff leave to amend in order to clarify whether he contends
26   that Dr. Ierokomos was deliberately indifferent.

27

28

## IV. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, Plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260–61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's first amended complaint is dismissed with leave to amend; and
2. Plaintiff shall file a second amended complaint within 30 days of the date of service of this order.

Dated: August 4, 2021

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

9